NEWELL v. REID.

SALES—WARRANTY—ACTIONS—EVIDENCE.

Evidence that plaintiff bought bran of the defendant which he fed to two cows and they died with symptoms of arsenical poisoning, that what remained of the feed was screened, a portion submitted to a chemist who analyzed the sample and found traces of arsenic amounting to about a grain to one and a half ounces, that the bran had been swept up off the floor of defendant, who used rat poison on his premises, though he introduced evidence to show that the poison contained no arsenic, was sufficient to sup-

port a verdict for plaintiff and warranted an inference that the bran contained poisonous material.

Error to St. Clair; Tappan, J. Submitted October 15, 1915. (Docket No. 115.) Decided December 21, 1915.

Case by John Newell against James Reid and another for breach of warranty of a quantity of bran. Judgment for plaintiff. Defendants bring error. Affirmed.

*Clair R. Black* and *John B. McIlwain,* for appellants.

*Walsh & Walsh* (*C. L. Benedict,* of counsel), for appellee.

OSTRANDER, J. It is alleged in the plaintiff's declaration that he purchased from defendants bran to feed to cattle, that defendants sold him the bran for such use, that the bran was not fit and proper for such use—

"and was mixed with and contained poisonous substances and unwholesome and deleterious material, and was entirely worthless and of no value and unfit for such use and of a poisonous and unwholesome nature; and the said plaintiff,   *   *   *   relying upon said promises and warranties, fed such bran and materials to certain live stock, to wit, two cows then and there the property of said plaintiff of the value of, to wit, $300, which thereupon, by reason of its unwholesome and poisonous nature, immediately became sick and soon thereafter died as a result of eating said bran and materials aforesaid."

The court refused a peremptory instruction favorable to defendants. Defendants then presented, and the court submitted to the jury, two special questions, namely:

"Do you find from the preponderance of the evidence in this case that the two cows of the plaintiff died from arsenic poison, and not from other causes?

"Do you find from a preponderance of the evidence

in this case that at the time of the sale of the bran to plaintiff there was arsenic in the small sack sufficient to kill the two cows?"

To each question the jury returned an affirmative answer, with a general verdict for plaintiff of $140.

It is certified that the bill of exceptions "has been made sufficiently full and complete so that the Supreme Court on writ of error may by going over the same be able to make an examination of the entire case."

It is the contention, and only contention, of defendants, appellants, that the answers to the special questions and the general verdict are not supported by testimony. In considering this contention, it is assumed that the record contains substantially all of the testimony given at the trial. Otherwise, it would be presumed that testimony had been given which supported the findings of the jury. *Stevens* v. *Rose*, 69 Mich. 259 (37 N. W. 205). The assumption is based upon what seems to be the fair meaning of the certificate above referred to.

The contents of the stomachs of the two cows which died, and which the plaintiff claims were poisoned, were not analyzed. However, the testimony for the plaintiff tended to prove that both cows were fed bran from a package purchased from defendants, both died, exhibiting symptoms of arsenical poisoning, the remainder of the contents of the package was screened, a portion of the material was submitted to a chemist, and he found upon an analysis that it contained arsenic. Further, the testimony tended to prove that when it was sold to plaintiff the bran was not in the packages purchased by defendants from the manufacturer of the bran, but had been resacked by defendants after having been turned out upon the floor of their barn, or storehouse. The smaller package, claimed to have contained the noxious substance, or substances, had in it, besides bran, pieces of bread and meat. The

chemist tested a portion of a sample of 1½ ounces of this material, consisting of a mixture of bread, bran, meat, dirt, and hairs, and found arsenic, and estimated that in the 1½ ounces there was probably a grain of arsenic. Defendants used rat poison about their premises on several occasions, putting it upon bread and meat. A box of the material screened from the smaller sack of bran, and like that sent to the chemist, was exhibited to the jury. It is not mere conjecture, but an inference, based upon testimony, that the smaller sack of bran contained sweepings from the storehouse floor and included portions of bread and meat and rat poison, which ought not to have been sold for food for cattle. There was testimony tending to prove that the rat poison used by defendants contained no arsenic, and different persons might have reached different conclusions concerning the preponderance of the evidence. That there was testimony supporting the finding is, I think, clear.

The judgment is affirmed.

BROOKE, C. J., and PERSON, KUHN, STONE, BIRD, MOORE, and STEERE, JJ., concurred.